**Addendum A**

Outline of additional allegations to be included in First Amended Complaint, in the general allegations section, applicable to all Counts

a) Sweet Feeney Marketing Group (SFMG) was exclusively employed by Kyros Law Group (KLG) pursuant to a written contract set forth as Exhibit A [attached to the original complaint], which commenced in January of 2011 and ended in January of 2016, with a two year "tail" thereafter, and a covenant not to compete set forth therein

b) Under the terms of that Contract SFMG was required to prudently expend for advertising purposes only all of the funds provided by KLG for the purpose of maximizing the production of qualified client leads for the subject of the various campaigns undertaken, which leads would then be turned over to outside law firms under co-counsel agreements with KLG, for the purpose of collecting upon personal injury claims.

c) The goal of campaign expenditures was to maximize the number of qualified clients produced and thus the return to KLG and its associated co-counsel.

d) Under the terms of the Contract SFMG was to receive as compensation a defined monthly fee, and a profit sharing interest in the net proceeds of money received from KLG's co-counsel. All campaign expenditures to were be billed at cost and accounted for.

e) As an integral part of SFMG's duties, all Client information concerning qualified case leads (including but not limited to confidential client information such as medical issues, names, addresses, social security numbers, dates, times and details of the particular injuries, and correspondence with co-counsel were to be maintained in a Database licensed from Salesforce and paid for by KLG.

f) Customizations of the Salesforce database [algorithms to analyze the gathered data for marketing purposes] were paid for by KLG as a "work for hire", and owned by KLG, as well as the individual elements of the data.

g) Defendant Michael Patrick Feeney [MPF], husband of Christina Feeney, the CEO of SFMG, was hired by SFMG and entrusted with entering and handling data in and within the FLG database, and assisting in crafting advertising campaigns with the expenditures associated therewith.

h) MPF at all times knew that the Data in the database and its custom analytics paid for by KLG were confidential and proprietary information and bound by the covenant not to compete in the contract.

i) MPF was paid well over $400,000.00 in salary while at SFMG to carry out his duties and functions above described under the contract with KLG, and in addition to his salary was the recipient of hundreds of thousands of dollars in benefits disguised by SFMG with MPF's knowledge and approval as "campaign expenses".

j) While MPF was still in the employ of SFMG and under exclusive contract to KLG to handle KLG's confidential information, Database, and campaign expenditures, MPF began a campaign of setting up a law firm to compete with KLG in violation of the contractual covenant not to compete and confidentiality clause of his employment.

k) Paragraph 9 of the exclusive SFMG contract with KLG [Ex A to FAC][1] states: "Confidential Information" says both parties shall protect the same with general duties that cover all SFMG disclosures.

l) Paragraph 11 of the exclusive SFMG Contract states: "Non-Competition and Non-Solicitation" language paragraph B prevents SFMG "and its affiliates, shall not, directly or indirectly solicit or hire current or former employees or independent contractors of Client (KLG) without Client's prior written consent in each case."

m) Paragraphs 9 and 11 of the Contract are binding upon both SFMG, Christina Feeney, MPF and any law firm he established as his alter ego, in this case FLF.

---

[1] This Exhibit is currently Exhibit A in the Complaint, and will be carried over to any First Amended Complaint: "FAC"

n) Instead of not soliciting employees of KLG, SFMG as directed by MPF's wife, Christina Feeney, instead conspired to transfer all of SGMG's assets to FLF and MPF while they were still employed by KLG, and utilized KLG's electronic mail and the assets they diverted from advertising campaigns to accomplish this objective.

o) On 4/16/21, for the first time, after years of denials, Plaintiff's "IT" expert, Mikhail Druskin, was furnished with a 22-gigabyte cache of data entitled, "Known Host Files" from Attorney Charles Basler whom Plaintiff understands to represent Christina Feeney and SFMG in a "State litigation". Up until April of 2021, Christina Feeney had consistently denied that she or SFMG had possession of any of the electronic mails of the Kyros Law Group and consistently maintained that any such emails which existed had been automatically turned over to KLG with the KLG websites.

p) The total size of the turned over data cache was approximately 22-gigabytes. Upon examination by KLG's expert, the 22G's of data contain:

a) A backup of the user directory of a managed CentOS Linux server;

b) Several compressed archives containing backups of the web files of several KLG websites.

q) The metadata in these files indicates they were downloaded from the server on which they resided between the dates of June 5, 2020 and June 8, 2020.

r) The data cache turned over to KLG on 4/16/21(about 10 months later), contained an immense amount of data that has never been furnished to KLG before, including KLG email files that were stored on the subject server. Despite repeated prior requests, and repeated denials that the data existed, the first time the data was turned over was after an Order from the Discovery Master in the State litigation had been appealed to the presiding Superior Court Judge and the Judge ordered the turn over. Prior to April 16, 2021, this crucial data was knowingly and intentionally hidden by SFMG and MPF and FLF, its successors, and its existence denied by them.

s) Once the data was received, KLG's expert was able to commence examination of the KLG emails which had been hidden and kept from KLG by SFMG and the Defendants in this matter.

t)  From an examination of the data turned over in April of 2021, KLG has concluded that it is more likely than not that there are many more emails that have still not been turned over and were not downloaded by SFMG or put in the data transfer to KLG.  This conclusion is reached by examining the instances of the emails that were turned over.  For example, emails from one KLG email address but sent to another KLG email address found only the sending or the receipt in the turned over cache, but not both which should have been the case if the turn over was full.

u)  Many of the emails just disclosed in April of 2021 detail the plans of SFMG, MPF and the law firm MPF was to establish, FLF, to acquire the proprietary information of KLG and transfer it to the Feeney Law Firm which has as its CEO, Christina Feeney, who is also the CEO of Sweet Feeney Marketing Group, and which it has as its owner, Michael P. Feeney - - all facts continuously denied and covered up.

v)  For example, an email dated November 16, 2015, from Christina Feeney at kyroslawgroup.com to Mike Feeney at kyroslawgroup.com states that SFMG desires to transfer an entire list of "assets of SFMG to Mike's new Firm".  Among the assets transferred are the Salesforce license which belongs to KLG as a work for hire.  See Exhibit A incorporated by reference herein.

w)  In Paragraph 3d of said email, Christina Feeney notes to her husband that her husband Defendant Michael Feeney that the current Salesforce license "said to expire in August 2016 and has been paid for in full".  That payment was made by KLG, not by anyone else.  So much is admitted in Paragraph 3d (ii).

x)  In Paragraph 3d(iii) of the email, Christina Feeney points out to Defendant Michael Feeney the importance of transferring the rights and license of the Salesforce database to "Mike's new law firm".  This email was made at a time when both Christina Feeney and Michael Feeney worked for Kyros Law Group (Christina Feeney held Michael Feeney out to the world as an employee of Kyros Law Group, through KLG's exclusive contract with SFMG).  The emails were sent and received on the Kyros Law Group email system.

y)  On November 20, 2015, also while working under the Kyros Law Group email system, Stefan Vounessea, mailed to Christina Feeney, copied to Mike Feeney, both on the Kyros Law Group email system, procedure for establishing the Feeney Law Firm.  See Exhibit B incorporated by reference herein.

z)  Also on November 20th, Christina Feeney wrote to Stefan Vounessea, with a copy to Michael P. Feeney, also through the Kyros Law Group email system, that "Mike's new law firm will more or less be replacing Sweet Feeney Marketing Group". See Exhibit C incorporated by reference herein. This is direct evidence, first obtained in April of 2021, and then only after Court Order, that it was in fact the intention and agreement of the Sweet Feeney Marketing Group that the new law firm of Michael P. Feeney step into the shoes of the Sweet Feeney Marketing Group as well as taking over what it termed Sweet Feeney's assets, full well in the knowledge that the Database belonged to Kyros Law Group as a work for hire and paid for by Kyros Law Group.

aa)     On 11/16/2015, an email (attached hereto as Exhibit D incorporated by reference herein) and marked "priority: highest" was sent from Christina Feeney to her husband, Mike Feeney, again utilizing the Kyros Law Group email system to discuss setting up of the new Feeney Law Firm and to discuss "How to best buy/obtain the assets of Sweet Feeney Marketing Group". Christina Feeney states, "This is our priority list as of now". It is obvious through this continuous exchange of emails that Christina Feeney and Michael Feeney were carefully coordinating their plan to evade the Confidentiality Agreement and covenant not to compete with the Kyros Law Group that had been signed with the Kyros Law Group and to transfer the Database to the Feeney Law Firm, Defendants here.

bb)     On 11/20/2015, Christina Feeney as "Executive Director, Marketing and Operations" sent an email to an employee of Salesforce asking about how to transfer the Salesforce Database, see Exhibit E attached hereto and incorporated by reference herein.  These emails were sent from the Kyros Law Group email account. A further employee of SFMG who was supposed to be working exclusively for Kyros Law Group, Brett Katsma, corresponded with Salesforce on November 16, 2015, stating that "Our current Company may be bought/absorbed by another Company" and stated that "Part of this would hinge on being able to transfer our Salesforce account, including all customizations, etc.", see Exhibit F attached hereto and incorporated by reference herein. Not only the Salesforce account but the customization was owned and paid for by KLG as a work for hire, all as known to Michael P. Feeney and by direct imputation to his solely owned law firm, Defendant Feeney Law Firm, LLC.

cc)     On November 13, 2015, Christina Feeney, utilizing the Kyros Law Group email system, sent an email attached hereto as Exhibit G incorporated by reference herein, to Brett Katsma, Greg Fay, Matt Feeney (the Defendant's brother), and Michael Feeney, to discuss the establishment of websites for the new Feeney Law

Firm which, from the emails, are in direct competition with the Kyros Law Group. All the recipients of the email, at the time the email was sent, were working under the Exclusive Contract that KLG had with SFMG requiring SFMG to work upon marketing and database activities for KLG. Utilizing the email system to plan for a new firm that would misappropriate KLG's highly expensive and proprietary Database and utilize it to go into competition in violation of a signed Agreement prohibiting such competition, constitutes a breach of fiduciary responsibility.

dd)    In November of 2015, numerous additional emails originating on the Kyros Law Group email accounts or sent to said accounts were authored by Christina Feeney, Michael Feeney and their advisors concerning the establishment of promotion of the FLF.

ee)    One such email discusses using other than the KLG email system to send and receive Feeney Law Firm discussions. ·

ff)    Not only was the Kyros Law Group never informed of these activities by SFMG, but instead, SFMG and its Principal, Christina Feeney, and the two Defendants, actively conspired to hide their involvement in establishing another business to go into competition with the Kyros Law Group.

gg)    Any allegation made under any designated "Count" in this matter is also incorporated into all other Counts whether such Counts appear in sequence before or after said allegations.



From: <christina@kyroslawgroup.com>

To: <mike@kyroslawgroup.com>

Subject: **Draft to Jennie & Chris**

Date: **Mon, 16 Nov 2015 14:55:34 -0500**

Message-ID: <015a01d120a8$c23bab60$46b30220$@kyroslawgroup.com>

MIME-Version: 1.0

Content-Type: multipart/related;
    boundary="----=_NextPart_000_015B_01D1207E.D9679F30"

X-Mailer: Microsoft Outlook 14.0

Thread-Index: AQHJeUAlt+JajiYTWRwpTRxhW3JeVw==

Content-Language: en-us

X-OlkEid: 5FC4B2278CE498A2CD350542AEDF61C0A4D5EBF0

# Draft to Jennie & Chris

To mike@kyroslawgroup.com on 2015-11-16 14:55

| | |
|---|---|
| **From** | christina@kyroslawgroup.com |
| **To** | mike@kyroslawgroup.com |
| **Date** | 2015-11-16 14:55 |

All headers...
Details Plain text
Jennie, Chris & Chris –

I wanted to circle back on this email, specifically, point #5 below as it relates to next steps.

I'm looping in Chris Sullivan since he is working on the Amendment between Andy & SFMG/Feeney. I think he is best suited to weigh in on any potentially legal issues with the following. That said, assuming there are no potential issues posed by you or our attorney(s), here is how Mike and I have decided to proceed:

    1.   SFMG's contract with KLG will naturally expire on 12/31/15. Our goal is to get a signed termination of services agreement with KLG that will outline the future profit share payment to SFMG as well as the transitional items to KLG.

2.    SFMG will continue to run as a company solely to assist in transitional items and to receive its profit share from KLG for a minimum of one year. Most likely it will dissolve some time in 2017 after the last payment is made to Andy Sweet. (Obviously this assumes the amendment between Sweet and SFMG will be signed by the end of this year.)

3.    I would like to 'sell' or 'transfer' the following assets of SFMG to Mike's new firm:

   a.    Computer & Office equipment – Laptops, monitors, keyboards, printers, shredders, scanners, label makers, etc

   b.    Office furniture – Desks, chairs, conference tables, bookcases, etc

   c.    Car lease (For employee Matthew Feeney)

   d.    Salesforce License - Few things to note on this one:

      i.    The current 'lease' is set to expire in August 2016 and has been paid for in full.

      ii.    The full amount of the license has been reimbursed by KLG, and per the contract between KLG and SFMG, KLG has rights to the lease for one full year after the contract terminates.

      iii.    The important piece to figure out here is how we transfer the 'rights/license' of the current agreement with Salesforce.com from SFMG to Mike's new law firm.

All that said, our questions are as follows:

1.    What is the best way to transfer/sell these assets from both a tax & legal perspective?

2.    Jennie/Chris G – Does this scenario above solve the potential problem of the tax basis? Does additional research still need to be done to better understand the family attribution rules of selling the assets to the law firm?

3.    Chris S – Based on the current arrangement outlined in the amendment we are trying to finalize with Andy Sweet, how clean/separated do we really need to keep these two entities (SFMG and Mike's new firm)? I ask because the current language in the amendment already allows for Sweet to view contracts, financials and tax returns of all parties. What, if any, complications are we leaving ourselves vulnerable to by selling/transferring these assets?


Christina Feeney
*Executive Director, Marketing & Operations*



D: 617-481-6445
C: 617-610-4018
www.kyroslawgroup.com



From: "Mike Feeney" <mike@kyroslawgroup.com>

To: "'Stefan Vounessea'" <svounessea@cvlegal.com>,

   "Christina Feeney" <cfeeney@sweetfeeney.com>

References:

<2D7ECB6EFBB94949A2A983351F8DB7809535CF7E@ORD2MBX10A.mex05.mlsrvr.com>

<D274A2C4.7D67D%svounessea@cvlegal.com>

<2D7ECB6EFBB94949A2A983351F8DB7809535D24E@ORD2MBX10A.mex05.mlsrvr.com>

<D274A52E.7D689%svounessea@cvlegal.com>

<2D7ECB6EFBB94949A2A983351F8DB7809535D317@ORD2MBX10A.mex05.mlsrvr.com>

<D274AF71.7D697%svounessea@cvlegal.com>

In-Reply-To: <D274AF71.7D697%svounessea@cvlegal.com>

Subject: RE: New Law Firm

Date: Fri, 20 Nov 2015 12:39:34 -0500

Message-ID: <021701d123ba$6c4e3910$44eaab30$@kyroslawgroup.com>

MIME-Version: 1.0

Content-Type: multipart/related;

   boundary="----=_NextPart_000_0218_01D12390.8392BDF0"

X-Mailer: Microsoft Outlook 14.0

Thread-Index:
AQFCcUoTKbWUe6XnPue5Do05+ABHoAKoI2DZAeL5yYcCnk2G8gITxco7Aj0Sz/4B2fa4WA==

Content-Language: en-us

X-OlkEid: 3FA47E27C601A1B33C094D479D60B46CB58839A2

# RE: New Law Firm

**To** 'Stefan Vounessea' 1 more... on 2015-11-20 12:39

| | |
|---|---|
| From | Mike Feeney |
| To | 'Stefan Vounessea', Christina Feeney |
| Date | 2015-11-20 12:39 |

All headers...

Details Plain text

Stefan, thank you for your response. I was looking through the BBO's website and is the certificate you are referring to below a "Certificate of Admission and Good Standing" issued by the Supreme Judicial Court Clerk's office? I just want to make sure I'm filling out the correct forms so I don't delay things on my end.

Thank you,
Mike

From: Stefan Vounessea [mailto:svounessea@cvlegal.com]
Sent: Friday, November 20, 2015 11:10 AM
To: Christina Feeney
Cc: 'mike@kyroslawgroup.com'
Subject: Re: New Law Firm

Thanks. First thing Mike will need to do is reach out to the Board of bar Overseers and let them know he wants to start his own firm and needs a a "Certificate of the Massachusetts Board of Bar Overseers" to the effect that he is duly licensed to render legal services in Mass.

The reason is that we need to attach that to the state filing. It could take a few days for him to get it.

From: "cfeeney@sweetfeeney.com" <cfeeney@sweetfeeney.com>
Date: Friday, November 20, 2015 at 10:57 AM
To: Stefan V <svounessea@cvlegal.com>
Cc: "'mike@kyroslawgroup.com'" <mike@kyroslawgroup.com>
Subject: RE: New Law Firm

Ah yes, Kyros is the firm we work with now, and will continue to work with once Mike is set up. He is most definitely Greek.

Here you go:

1. Yes Mike is the only owner
2. The Feeney Law Firm
3. 50 Bellevue Rd, Quincy, MA 02171
4. Michael Patrick Feeney

Christina Feeney
D: 617-481-6445
C: 617-610-4018



**From:** Stefan Vounessea [mailto:svounessea@cvlegal.com]
**Sent:** Friday, November 20, 2015 10:25 AM
**To:** Christina Feeney
**Cc:** 'mike@kyroslawgroup.com'
**Subject:** Re: New Law Firm

Ahh – the name Kyros through me off.

Questions:

1. I assume Mike will be the only owner.
2. Name of the firm?
3. Address of the firm
4. Mike's full name.

**From:** "cfeeney@sweetfeeney.com" <cfeeney@sweetfeeney.com>
**Date:** Friday, November 20, 2015 at 10:20 AM
**To:** Stefan V <svounessea@cvlegal.com>
**Cc:** "'mike@kyroslawgroup.com'" <mike@kyroslawgroup.com>
**Subject:** RE: New Law Firm

Haha – nope married a 1½ Italian, 1½ Irish mutt like myself.

Totally understand that you are tied up today. Let me know if you have 15 minutes available for a call on Monday. I'm hoping everything will be pretty straight forward from a set-up standpoint. That said, Mike's new law firm will more or less be replacing Sweet Feeney Marketing Group, so we are anxious to get insurance, payroll, benefits plans, etc. set up and running for the new firm by the end of the year. Also, not sure if such a thing exists, but if you happen to have a 'checklist' of sorts that you or your clients have used in the past when setting up a new law firm, that would be very helpful as well.

Let me know if we can get a call on the books for Monday; we'll work around your schedule. Thanks again.

Christina Feeney
D: 617-481-6445
C: 617-610-4018

From: Stefan Vounessea [mailto:svounessea@cvlegal.com]
Sent: Friday, November 20, 2015 10:14 AM
To: Christina Feeney
Cc: 'mike@kyroslawgroup.com'
Subject: Re: New Law Firm
Importance: High

Sure.  Congrats to Mike:

2 questions:

1.  Can we sync up on this next week (today is brutal for me)?
2.  You didn't marry a Greek did you?

From: "cfeeney@sweetfeeney.com" <cfeeney@sweetfeeney.com>
Date: Friday, November 20, 2015 at 9:27 AM
To: Stefan V <svounessea@cvlegal.com>
Cc: "'mike@kyroslawgroup.com'" <mike@kyroslawgroup.com>
Subject: New Law Firm

Morning Stefan,

I'd like to 'introduce' you to my husband Mike Feeney. He recently passed the MA bar and was sworn in yesterday. We are looking to get a new law firm set for him as soon as possible – LLC taxed as an S-corp. Would this be something you could assist us with?

Christina Feeney
*President*

D: 617-481-6445
C: 617-610-4018



From: <christina@kyroslawgroup.com>

To: <mike@kyroslawgroup.com>

Subject: Draft email to Sean Abbott

Date: Mon, 16 Nov 2015 10:03:30 -0500

Message-ID: <004601d1207f$f548cf20$dfda6d60$@kyroslawgroup.com>

MIME-Version: 1.0

Content-Type: multipart/related;

   boundary="----=_NextPart_000_0047_01D12056.0C751110"

X-Priority: 1 (Highest)

X-MSMail-Priority: High

X-Mailer: Microsoft Outlook 14.0

Thread-Index: AQF988dTP1XY3l9IdOIAItNoLW3oYA==

Content-Language: en-us

X-OlkEid: 5F24A92718BE27CAA0E7804CBE90246B5E7C60C3

Importance: High

# Draft email to Sean Abbott

To mike@kyroslawgroup.com on 2015-11-16 10:03

| | |
|---|---|
| **From** | christina@kyroslawgroup.com |
| **To** | mike@kyroslawgroup.com |
| **Date** | 2015-11-16 10:03 |
| **Priority** | Highest |

All headers...
Details Plain text
Figured you were busy so I drafted this up. You should probably send it from a non-SFMG account.

Dear Sean,

It was great speaking with you last week. As discussed, here is a summary of the items we are looking for your assistance on. Please let us know if you have any questions:

1. Set up of new law firm (LLC taxed as an S-corp)
2. Check list of items needed to start the law firm
3. Coordinate with Jennie at Feeley & Driscoll as how to best buy/obtain the assets of Sweet Feeney Marketing Group.

This is the priority list as of now. We'd like to get the firm set up by Friday so we can start on the immediate items of getting payroll, insurance, 401k, etc set up for the new entity. Once we finalize the items listed above we can discuss what services, if any, would be needed in negotiating a new contract with Kyros Law Group. Also, since the items above are a bit more standard than the laundry list of items/challenges we discussed over the phone, can you please ballpark the cost and your retainer requirement before we proceed?

Thanks in advance,


Christina Feeney
*Executive Director, Marketing & Operations*


D: 617-481-6445
C: 617-610-4018
www.kyroslawgroup.com



From: <christina@kyroslawgroup.com>

To: "'Steph D'Aguilar'" <sdaguilar@salesforce.com>

Cc: "'Brett Katsma'" <brett@kyroslawgroup.com>

References: <006f01d120a1$ec68a700$c539f500$@kyroslawgroup.com> <CAN9nJKU-giPqozqgStQmaNoLp=27_joQwOkuMTPu+QXJZsYF+w@mail.gmail.com> <03d401d123a5$bd793bb0$386bb310$@kyroslawgroup.com> <CAN9nJKWGUEyzUVic82tGjbuZ86UuG9c=X_ik0Z-dGqVkJLAARA@mail.gmail.com>

In-Reply-To: <CAN9nJKWGUEyzUVic82tGjbuZ86UuG9c=X_ik0Z-dGqVkJLAARA@mail.gmail.com>

Subject: RE: Salesforce Account Transfer Question

Date: Fri, 20 Nov 2015 10:20:40 -0500

Message-ID: <03e901d123a7$04d73ba0$0e85b2e0$@kyroslawgroup.com>

MIME-Version: 1.0

Content-Type: multipart/alternative;
    boundary="----=_NextPart_000_03EA_01D1237D.1C0663C0"

X-Mailer: Microsoft Outlook 14.0

Thread-Index: AQJu/hM/rfdIfDOMfkxX+HOb4J5GpwFnR9QBA4XmZpICaYbsqQGsA6cm

Content-Language: en-us

X-OlkEid: 5F04D127828416BA9067074490190EFC8DE7615D

# RE: Salesforce Account Transfer Question

To 'Steph D'Aguilar' on 2015-11-20 10:20
Details Plain text
Perfect, thanks again.

Christina Feeney
*Executive Director, Marketing & Operations*
D: 617-481-6445
C: 617-610-4018

From: Steph D'Aguilar [mailto:sdaguilar@salesforce.com]
Sent: Friday, November 20, 2015 10:17 AM

To: Christina Feeney
Cc: Brett Katsma
Subject: Re: Salesforce Account Transfer Question

Hi Christina,

Thanks for your note. That shouldn't be a problem to just move the account over if you get acquired. If you need to add any other licenses/make changes to the account, let me know and I can work with you to get that done.

Please let me know if you have any other questions,
Steph

Steph D'Aguilar
Salesforce.com
O: 647-258-4058 | M: 289.221.2739 | sdaguilar@salesforce.com

 Connect to your customers in a whole new way.
SEE HOW AT SALESFORCE.COM

On Fri, Nov 20, 2015 at 10:11 AM, <christina@kyroslawgroup.com> wrote:
Hi Steph,

That makes sense. That said, the new company currently does not have an existing account with Salesforce. Do we need to actually set up a new one, or can the name on the account simply be transferred?

Christina Feeney
*Executive Director, Marketing & Operations*
D: 617-481-6445
C: 617-610-4018

From: Steph D'Aguilar [mailto:sdaguilar@salesforce.com]
Sent: Wednesday, November 18, 2015 9:02 AM
To: Brett Katsma
Cc: Christina Feeney
Subject: Re: Salesforce Account Transfer Question



Hi Brett,

Thanks for your email - being able to transfer your Salesforce account over shouldn't be a problem. The transfer would have to be completed by the Salesforce account executive that owns the account that you're getting merged with.

Does that make sense?

Thanks,
Steph

Steph D'Aguilar
Salesforce.com
O: 647-258-4058 | M: 289.221.2739 | sdaguilar@salesforce.com



On Mon, Nov 16, 2015 at 2:06 PM, Brett Katsma <brett@kyroslawgroup.com> wrote:
Hi Steph,

There is the potential that our current company may be bought/absorbed by another company. Part of this would hinge on being able to transfer our Salesforce account, including all customizations, etc.  Would you be able to help me understand what would be entailed to complete a transfer like this.  Best number to reach me at is my cell 616-723-4159 and I'm in EST.

Thanks,
Brett Katsma

**From:** <christina@kyroslawgroup.com>
**To:** "'Brett Katsma'" <brett@kyroslawgroup.com>,
   "'Greg Fay'" <greg@kyroslawgroup.com>,
   "'Matt Feeney'" <matt@kyroslawgroup.com>,
   <mike@kyroslawgroup.com>
**References:** <012801d11cca$76c92400$645b6c00$@kyroslawgroup.com>
<058801d11cd0$5f24af30$1d6e0d90$@kyroslawgroup.com>
<016f01d11cd5$b6ae40e0$240ac2a0$@kyroslawgroup.com>
<003001d11d9e$537d3d90$fa77b8b0$@kyroslawgroup.com>
<000901d11e2b$1a275f70$4e761e50$@kyroslawgroup.com>
**In-Reply-To:** <000901d11e2b$1a275f70$4e761e50$@kyroslawgroup.com>
**Subject:** RE: URLs for new law firm
**Date:** Fri, 13 Nov 2015 13:13:21 -0500
**Message-ID:** <032c01d11e3e$fb55b9c0$f2012d40$@kyroslawgroup.com>
**MIME-Version:** 1.0
**Content-Type:** multipart/related;
   boundary="----=_NextPart_000_032D_01D11E15.1284BAD0"
**X-Mailer:** Microsoft Outlook 14.0
**Thread-Index:** AQG+edXYkQdA7PvqrmAoDfJm2osfGADQ4mm6AoO/YlEB3b7EJAFkz11IAoU6y04=
**Content-Language:** en-us
**X-OlkEid:** 5F249E273B26BF8D0C515A4C970F750475B3B406

# RE: URLs for new law firm

To 'Brett Katsma' 3 more... on 2015-11-13 13:13

| | |
|---|---|
| **From** | christina@kyroslawgroup.com |
| **To** | 'Brett Katsma', 'Greg Fay', 'Matt Feeney', mike@kyroslawgroup.com |
| **Date** | 2015-11-13 13:13 |

All headers...
Details Plain text
Thanks Brett — well thought out.

EXHIBIT

G

ALL-STATE LEGAL®

**From:** <christina@kyroslawgroup.com>
**To:** "'Brett Katsma'" <brett@kyroslawgroup.com>,
    "'Greg Fay'" <greg@kyroslawgroup.com>,
    "'Matt Feeney'" <matt@kyroslawgroup.com>,
    <mike@kyroslawgroup.com>
**References:** <012801d11cca$76c92400$645b6c00$@kyroslawgroup.com>
<058801d11cd0$5f24af30$1d6e0d90$@kyroslawgroup.com>
<016f01d11cd5$b6ae40e0$240ac2a0$@kyroslawgroup.com>
<003001d11d9e$537d3d90$fa77b8b0$@kyroslawgroup.com>
<000901d11e2b$1a275f70$4e761e50$@kyroslawgroup.com>
**In-Reply-To:** <000901d11e2b$1a275f70$4e761e50$@kyroslawgroup.com>
**Subject:** RE: URLs for new law firm
**Date:** Fri, 13 Nov 2015 13:13:21 -0500
**Message-ID:** <032c01d11e3e$fb55b9c0$f2012d40$@kyroslawgroup.com>
**MIME-Version:** 1.0
**Content-Type:** multipart/related;
    boundary="----=_NextPart_000_032D_01D11E15.1284BAD0"
**X-Mailer:** Microsoft Outlook 14.0
**Thread-Index:** AQG+edXYkQdA7PvqrmAoDfJm2osfGADQ4mm6AoO/YlEB3b7EJAFkz11IAoU6y04=
**Content-Language:** en-us
**X-OlkEid:** 5F249E273B26BF8D0C515A4C970F750475B3B406

# RE: URLs for new law firm

To 'Brett Katsma' 3 more... on 2015-11-13 13:13

| | |
|---|---|
| **From** | christina@kyroslawgroup.com |
| **To** | 'Brett Katsma', 'Greg Fay', 'Matt Feeney', mike@kyroslawgroup.com |
| **Date** | 2015-11-13 13:13 |

All headers...
Details Plain text
Thanks Brett — well thought out.

One follow up question for the group – how helpful do we think the word 'personal' is in the domain? Do we think including it outweighs the benefit of a shorter domain? I'm just trying to think down the road if we wanted a memorable URL that could be used on TV, print, etc . .

Christina Feeney
*Executive Director, Marketing & Operations*
D: 617-481-6445
C: 617-610-4018

From: Brett Katsma [mailto:brett@kyroslawgroup.com]
Sent: Friday, November 13, 2015 10:51 AM
To: 'Greg Fay'; christina@kyroslawgroup.com; 'Matt Feeney'; mike@kyroslawgroup.com
Subject: RE: URLs for new law firm

In my experience when someone is searching 'local', they're searching by city; "boston personal injury lawyer", "quincy criminal defence attorney", etc. I don't know if anyone will search "MA" or "Local" often, or often enough to really move the needle on generating cases from an SEO standpoint. In my opinion then the value you get is from the repeated use of "attorney" or "lawyer" in all your links.

I've been looking at what I think is the holy grail for local; "Boston Personal Injury...". It's really, really competative. I don't think we are going to rank for something like this no matter the domain. The domain can only take us so far. As the article you linked stated, a lot has to do with backlinks. Backlinks come from yellowpages, yelp, citysearch, etc. They also come from non-citation sites. For instance if you get picked up by a local newspaper, or putting out a press release, etc. So...if the idea is to rank for 'Boston' personal injury, I'm not sure the domain really matters. The other sites are very strong and no one domain and simple tactics will be able to over rank them.

I wanted to touch on a few things in http://www.internetlava.com/AttorneyLawyer/InternetMarketing/StartingYourLawFirm.aspx. The author I think does a really good job laying out the basics for local and what to really fact for. Almost all of it I agree with. By local, I take this as Google local listings (see below for "Boston Personal Injury lawyers"). To get these types of rankings, as the article stated, there are several large factors. I ranked them in the order I feel is most important. Physcial address is HUGE. I don't think there is a way to get into 'Boston' if the address is in Quincy. Also, not every local search will show this. More research would need to be done on what shows based on the address. PO Box's don't really work either. Google has really been tightening the screws on this, making it almost impossible to 'fake' your way in.

Google Local Ranking Factors
1) Physical address;
2) Reviews
3) Local phone number;
4) URL address for the law firm's main website

5)   Firm Name

Snapshot of Google Local Listings

---

Considerations:

1) How important will local listing will be?  Is there enough 'work' in the Quincy area to optimize for local?  All this said, the idea's behind local are sound and should be followed in general for the overall benefit of the site.

2) Potential for multiple case types.  In simple terms a great local domain breaks down to the lowest common domoniator; DUI, Criminal Defense, etc.  I think we have seen we don't just have bad 'drugs', but devices and recalls to potentially worry about.

Thoughts on a strategy:

I still like the two domain strategy.  It gives flexability to expand as needed in terms of case types, but also leaves room for consumer facing items.  I think we shoud consider going with a 'personal injury' & 'lawyer' domain for local.  I think more people search for lawyer than attorney.   The local site would handle the PI cases.  It could also be built out with individual city pages to try get local rankings in small towns.  I would then use the firm domain for consumer facing ideas.  I also think if we get into non-PI cases, this could be built out on the firm domain as well.  Generally these terms are less competative, and hopefully a better chance of getting ranked.

> Local domain: (ranked in order)
> mapersonalinjurylawyer.com  *$880; pricey, but I think solid.

mainjurylawyer.com
mainjuryattorney.com

*if there is a domain that is taken, but not really being used, I can always reach out. My experience has been they always want to much. However, it never hurts to ask.

Firm Domain: (ranked in order)
feeneylawfirm.com
feeneylawoffices.com


From: Greg Fay [mailto:greg@kyroslawgroup.com]
Sent: Thursday, November 12, 2015 6:03 PM
To: christina@kyroslawgroup.com; 'Matt Feeney'; 'Brett Katsma'; mike@kyroslawgroup.com
Subject: RE: URLs for new law firm

To not pigeon hole ourselves with a URL based on the type of local service Mike plans to provide, here are my top 4 that focus on 'Local & MA' rather than only 'Injury':

LocalMAAttorney.com
MALocalAttorney.com
LocalMALawyer.com
MALocalLawyer.com

For the brand URL, here are my choices:

MPFeeneyLaw.com
FeeneyLawFirm.com

Greg Fay
*Offline Media Director*
D: 617-302-4284


From: christina@kyroslawgroup.com [mailto:christina@kyroslawgroup.com]
Sent: Wednesday, November 11, 2015 6:07 PM
To: 'Matt Feeney'; 'Brett Katsma'; 'Greg Fay'; mike@kyroslawgroup.com
Subject: RE: URLs for new law firm

Just for clarification; we would not run 2 sites. We could purchase multiple domains and have them redirect to our primary site but managing multiple sites doesn't make sense.

Also, consider the downside of registering the company as 'Feeney Law' when the domain is not available. Check out the website to see what comes up now: http://feeneylaw.com/ This could create a lot of confusion.

Finally, might be worth everyone reading section 6 here.
http://www.internetlava.com/AttorneyLawyer/InternetMarketing/StartingYourLawFirm.aspx
It does a good job of explaining the rationale behind using a non-attorney-named URL for your domain.


Christina Feeney
*Executive Director, Marketing & Operations*
D: 617-481-6445
C: 617-610-4018

From: Matt Feeney [mailto:matt@kyroslawgroup.com]
Sent: Wednesday, November 11, 2015 5:29 PM
To: christina@kyroslawgroup.com; 'Brett Katsma'; 'Greg Fay'; mike@kyroslawgroup.com
Subject: RE: URLs for new law firm

I like Feeney Law as a name. Obviously it stinks the domain is taken, but feeneylawoffice.com can be used for the website, still. Feeney Law just sounds simpler and flows easier.

In regard to the local presence domains, I'm assuming we would be using in addition to the feeney law main page? If so, I hate to pick the most expensive but I really like MAInjuryAttorney.com. I think that one works better than having the MA at the end. MApersonalinjury.com available? Or personalinjuryMA.com? MassInjuryAttorney could work too even though that is not the abbrev for Massachusetts anymore.

Matthew Feeney
D: 617-405-4737
C: 617-653-6875
E: matt@kyroslawgroup.com

From: christina@kyroslawgroup.com [mailto:christina@kyroslawgroup.com]
Sent: Wednesday, November 11, 2015 4:47 PM
To: 'Brett Katsma'; Greg Fay; Matt Feeney; mike@kyroslawgroup.com
Subject: URLs for new law firm
Importance: High

We have just a few weeks to make a decision on a new firm name and URL to host the website. Here is where we are at:

We have purchased the following 2 domain names:

feeneylawoffice.com
feeneylawoffices.com

FYI, these are two are already taken:
FeeneyLaw
FeeneyLawGroup

Food for thought: *If* our goal here is to help our 'local' presence, we may want to consider a URL for the website that will help drive traffic. Here are a few I've found:

MAInjuryAttorney.com - $599
MAInjuryLawyer.com - $599
InjuryLawyerinMA - $2.99
InjuryLawyerMA – not available
InjuryAttorneyinMA- $2.99
InjuryAttorneyMA – not available
MAInjuryLawGroup - $2.99

As I understand it, our firm name can be one thing and our URL can be something totally different. However, our firm name must contain the name 'Feeney' somewhere in the title per MA law. We also have to check against Massachusetts Secretary department to ensure the name is not already taken.

Firm Names Available:
Feeney Law Office (domain is purchased)
Feeney Law Offices (domain is purchased)
Feeney Law (domain is taken)
Feeney Law Group (domain is taken)
[The] Feeney Law Firm (both domains are available)

I'd appreciate if everyone could weigh in on their thoughts.

Christina Feeney
*Executive Director, Marketing & Operations*


D: 617-481-6445
C: 617-610-4018
www.kyroslawgroup.com

No virus found in this message.

Checked by AVG - www.avg.com
Version: 2014.0.4842 / Virus Database: 4447/10981 - Release Date: 11/11/15

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2016.0.7227 / Virus Database: 4460/10977 - Release Date: 11/10/15
No virus found in this message.
Checked by AVG - www.avg.com
Version: 2016.0.7227 / Virus Database: 4460/10981 - Release Date: 11/11/15