UNITED STATES DISATRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KYROS LAW GROUP, LLC,           )
       Plaintiff,               )
                                )
                                )      C.A. No.1:21-cv-10895
v.                               )
                                )
MICHAEL PATRICK FEENEY and       )      **ORAL ARGUMENT REQUESTED**
FEENEY LAW FIRM, LLC,            )
       Defendants.              )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT**

Now comes the Plaintiff Kyros Law Group, LLC ("KLG") and opposes the Motion of the

Defendants Michael Patrick Feeney ("MPF") and Feeney Law Firm, LLC ("FLF") to Dismiss

the Complaint.

**I.     Introduction**

We respectfully submit that the Defendants seek throughout their Motion to obfuscate the

clear differences between this litigation and a State case which has been pending against both

another company and MPF's wife in the Norfolk Superior Court since 2016 ("State Litigation").

This action is founded upon <u>newly</u> revealed materials[1].  The gravamen of Defendants' argument,

(in large part made by way of conclusion), is that *if* the 2016 State litigation (from which their

Exhibits are drawn) had been brought *now* certain Counts might now be subject to dismissal,

absent a viable statute of limitations defense[2]. Different parties are before this Court, and the

issues and causes of action have different time parameters. What may or may not have been done

in the 2016 State Court action is not relevant here.  If it were, it would only verify active and

---

[1] Some revealed in discovery ordered in the State Court action just before the pandemic, and some through a 22 GB transfer of information disclosed only this year, again upon Court Order.

[2] Other sections would not, given that the Massachusetts contract statute old limitations is at minimum, 6 years.

continuing fraudulent concealment by Defendants' co-conspirators and substantiate Plaintiff's

persistent efforts to discover the truth surrounding the theft of its valuable Database and

analytics. The Database and analytics (in 2021, C-70) recently were revealed to have been

transferred to Defendant FLF through MPF's Christina Feeney and her company, the Sweet

Feeney Marketing Group ("SFMG"). Separately, Plaintiffs will file a Motion to Strike the State

Litigation Pleadings as Exhibits to Defendants' Motion for the reasons set forth therein.

Defendants' real argument here is that their deception was so successful that they "hid the ball"

long enough to become its owners.

## II.     Discussion of Relevant Factual Background

KLG and SFMG had a contractual relationship that began in January of 2011 [C-5, 21][3].

The contract expired by its own terms in January of 2016 [C-7].  SFMG's contractual obligation

was to manage the marketing of various "campaigns".  For example, to obtain as clients

mesothelioma victims, or later, athletes who played in the N.F.L and suffered concussions.

SFMG's reward[4]  and payment of monthly overhead [C-7, Ex. A, C-23] as a defined fee. Such

campaigns generate vast volumes of data [C-63] from those who respond. Some is within

conventional categories of client names, addresses and medical histories [C-27]. However, data

essential to the growth and profitability of KLG's business over time is of a more esoteric quality

-within the realm of what we now call "big data" or more precisely, the analytics of mining "big

data" once gathered [C11-13].

For example, a law firm which has determined that its advertising budget is $X.xx, is

understandably keen to know how it will generate the most income for the money spent [C-12].

---

[3] The references which appear as [C-x] cite paragraphs of the Complaint, "x" being the particular paragraph
[4] MPF was "hired" by his wife and paid for a full-time job while also charging his law school tuition and even parking
bills as campaign "expenses".  He received hundreds of thousands in benefits.

A company soliciting advertising business likewise desires to know how to best spend the money to produce qualified Clients. Repeat business comes from customers who believe they spent wisely [C-24].  Law firms seeking clients patronize advertisers who know how to generate qualified leads. "Cost per qualified customer acquired" is the metric to be determined through mining the Big Data gathered [C-14,23,24]. The data analytics within the database, paid for by KLG as a "work for hire" [C-11, 34, 36, 50, 68] produce the "Cost per customer" metric, and establish the efficiency and return on investment of any campaign.

That KLG's proprietary Database[5] was stolen by Christina Feeney ("CF") and SFMG [C-33, 35] and transferred to these Defendants was actively concealed. CF and SFMG fought for years in the State Litigation to hide the fate of the database analytics, holding out that pretense SFMG had little business and faced financial ruin. Recently disclosed in that matter through ordered discovery[6] was the fact that SFMG had been engaging in the ruse that it did not have certain information only because it had surreptitiously transferred [C-70] the information to MPF and his law firm FLF[7], and had been actively concealing that fact for years. Some of the funds embezzled from KLG through SMFG were utilized to establish the FLF [C-46, 52]. The stolen Database was used to solicit KLG's customer base for the benefit of FLF [C-61], as electronic communications <u>recently</u> <u>obtained</u> in 2021 from SFMG verify [C-70].

## III.    FED. R. CIV. P. 12(b)(6) STANDARD

"The requirement of plausibility on a **motion to dismiss** under Rule 12(b)(6) 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal

---

[5] For ease of reference, "Database" shall mean the actual data, the analysis, and the formulas which perform the analysis, considered as a whole.

[6] KLG brought a "Motion to Compel" discovery that had been resisted for years, and after several days of hearings before a Master won orders compelling the newly revealed disclosures that generated this matter. This happened from October 2019-May 2021.

[7] Christina Feeney claims to be the "Chief Executive Officer" of FLF even though a non-attorney is not permitted to hold office in a professional corporation devoted to the practice of law. See SJC Rule 3:06(1)(e).

[conduct].'" *Ocasio-Hernandez*, 640 F.3d at 17 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). *Rodriguez-Ramos v. Hernandez-Gregorat*,

685 F.3d 34, 42, 2012

Ultimately, "[t]he relevant question . . . in assessing plausibility is not whether the

complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s]

dismissal because it failed <u>in toto</u> to render plaintiffs' entitlement to relief plausible.'" *Rodríguez-*

*Reyes v. Molina-Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013) *Hernandez-Cuevas v. Taylor*, 723

F.3d 91, 102, 2013.   The Court must accept all non-conclusory factual allegations in the

Complaint as true and draw any reasonable inferences in favor of the plaintiff. *Ocasio-*

*Hernandez*, 640 F.3d at 12. *Philips Med. Sys. P.R. v. Alpha Biomedical & Diagnostic Corp.*,

2020 U.S. Dist. LEXIS 16351.

"a motion to dismiss may be granted on the basis of an affirmative defense, such as

the statute of limitations, as long as "the facts establishing the defense [are] clear 'on the face of

the plaintiff's pleadings.'" *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)"

Alvarez-Mauras Banco Popular of P.R 919 F. 3d 617,628 (2019).

Otherwise, there is a jury question, such as when tolling and fraudulent concealment are

alleged, and the fact finders must weigh in on the issue.
Since tolling and fraudulent concealment are here asserted in response to any statute of

limitations defense, it is important to note that:

"when a motion to dismiss is based on the running of the statute of limitations, it can be

granted 'only if the assertions of the complaint, read with the required liberality, would not

permit the plaintiff [to prove] that the statute was tolled. *Conerly v. Westinghouse Elec. Corp.*,

623 F.2d 117, 119 (9th Cir 1980)" *PTP OneClick, LLV v Avalara, Inc*. 413 Fed. Supp. 3ed 1050,

1066 (2019).  "A plausible but inconclusive inference from pleaded facts will survive a motion to

dismiss" since "it is possible that other, undiscovered facts, may explain the sequence

better".  *Collazo-Rosado v. Univ. of P.R.*, 775 F. Supp. 2d 376, 380, (2011). Under Rule

12(b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the

plaintiff cannot recover on any viable theory." *Gonzalez-Morales v. Hernandez-Arencibia,* 221

F.3d 45, 48 (1st Cir. 2000) *(quoting Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52 (1st

Cir. 1990)).

## IV – ARGUMENT COMMON TO ALL COUNTS[8]

   A.  M.G.L c. 260 § 12 and the Statute of Limitations.

G.L. c.260 §12 provides that a statute of limitations is tolled during any period of fraudulent

concealment by the party to be charged. *Baker v. Simmons Co.,* 325 F.2d 580 (1963); *Hays v.*

*Ellrich*, 471 Mass. 592 (2015).  It is applied in federal court to Massachusetts cause of action.

   "Under this statutory discovery rule, fraudulent concealment tolls the statute of

limitations where "the defendant[s] concealed the existence of a cause of action through some

affirmative act done with intent to deceive." *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 133,

434 N.E.2d 1015 (1982). In such circumstances, the limitations period is tolled unless the

plaintiff has *actual* knowledge of the claim. See *Stolzoff* v. *Waste Sys. Int'l, Inc.*, 58 Mass. App.

Ct. 747, 757, 792 N.E.2d 1031 (2003), citing *Lynch* v. *Signal Fin. Co. of Quincy*, 367 Mass. 503,

508, 327 N.E.2d 732 (1975). Where there is fraudulent concealment, "we have only attributed

knowledge to a plaintiff who had actual knowledge of the facts, or had the means to acquire

such facts, in circumstances where the probability of wrongdoing was so evident that possession

of the means was equivalent to actual knowledge." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424

---

[8] In order to reduce repetition, arguments of law generally applicable to all counts, except where noted, are set forth
in an introductory section.

Mass. 501, 520 n.25, 677 N.E.2d 159 (1997). *Magliacane v. Gardner*, 483 Mass. 842, 852,

(2020).

Where the Complaint alleges fiduciary duty, the Defendant is held to a more exacting

standard:

> "In these cases, the statute of limitations clock begins to run only when the plaintiff
> has "'actual knowledge' … of the facts giving rise to his causes of action," i.e., the facts
> which the fiduciary had failed to disclose".  Patsos, supra at 32 n. 11.
> See Crocker v. Townsend Oil Co., 464 Mass. 1, 9, 979 N.E.2d 1077 (2012) Hays v. Ellrich,
> 471 Mass. 592, 602,(2015).

B.  Concealment and Fiduciary duty are clearly alleged.

"A fiduciary duty exists "when one reposes faith, confidence, and trust in another's
judgment and advice." *Van Brode Group, Inc*. v. *Bowditch & Dewey*, 36 Mass. App. Ct. 509,
516, 633 N.E.2d 424 (1994), quoting  *Fassihi v. Sommers, Schwartz, Silver, & Tyler, P.C*., 107
Mich. App. 509, 515, 309 N.W.2d 645 (1981)" *Doe v. Harbor Sch., Inc*., 446 Mass. 245, 252,
(2006).

Ms. Feeney and Defendant MPF both worked for SFMG which was under exclusive

contract to  Plaintiff to: (a) efficiently manage millions of dollars in campaign money given to

SFMG by KLG, for the purposes for which such funds were intended [C-8,22,23,24,25];  (b) to

maintain a Database of thousands of KLG Clients, and their data [C-15, 21, 27, 63]; (c) to

maintain all customizations of the Database paid for as a work for hire by KLG and owned by it,

including the very valuable analytics and trade secrets within the Database [C-11-14, 29-31, 36,

54]; (d) to account for all advertising campaign expenditures [C-8, 17, 21 and Ex. A, 24-25]; (e)

to keep confidential all information obtained under the Agreement and maintained in the

Database [C-17-19, 53, 88-89].

Clearly faith and trust were reposed in the judgment of Ms. Feeney and her husband, who

both, as set forth in detail below (in Count specific sections) conspired to steal the valuable

KLG Database [C-33, 59, 68-70, 90, 90f] and embezzle millions in campaign funds, some of

which was employed to fund the establishment of FLF [C-45, 59, 66-68, 71-73, 92-93]. Far

from providing actual knowledge of their actions to KLG, Ms. Feeney and MPF actively

conspired to cover up MPF and FLF's actions in the theft of campaign funds and the Database,

and its purported conveyance to MPF and FLF [C-33, 46, 50, 52, 59, 70, 85, 90f].

## V.   PARTICULAR ARGUMENTS

A- Receipt and Wrongful use of Stolen Goods

Defendants confuse the case pled here with the State Litigation.  There are some

identical, but many different factual allegations.  Christina Feeney is CEO of both Sweet Feeney

Marketing Group, LLC, and claims to be CEO of Defendant FLF, and is Defendant MPF's wife

[C-3-5]. It was recently unearthed -only through discovery orders in the State Litigation, that Ms.

Feeney had fraudulently conveyed the database in question to her husband's law firm [C- 70, 85,

90]. The difference is between the act of stealing an item, and conveying the item stolen to a

third party who then hides it. Defendants here are the "third parties" now hiding the stolen

Database [C-33]. Even if a 3-year statute of limitations applied to the original theft by Ms.

Feeney, it does not benefit her husband (or his law firm) given that the two of them conspired to

hide the transfer [C-84-87, 90, 90f], and knowledge only became available after discovery

recently ordered in the State Litigation [C-70]. The conspiracy to hide the alleged transfer of title

tolls any statute of limitations since no one could pierce an exclusive husband-wife conspiracy,

and further since SFMG maintained its good standing at the Massachusetts Secretary of State's

Office, pretending to be in operation. See Exhibit A hereto, which is a public document. To find

otherwise would place a premium upon successful deception. The Defendants in essence urge

that if they possessed not only the Database, but the stolen masterpieces from the Gardner

Museum, their cleverness in hiding what was given to them by the thieves renders them immune

from a civil action to recover the stolen goods. To the contrary Massachusetts law states that the recipient of stolen goods [C-35, 90] can never obtain or convey good title or ownership. One has no right to keep or use to the detriment of another, what he does not own.  *United States v. Letter from Alexander Hamilton to the Marquis de Lafayette*, 498 F. Supp. 3d 158, 172 (2020) fn8. Here there cannot even be a "BFP" defense as the conspirators are husband and wife and the recipient of the stolen goods has the same C.E.O. as the company which masterminded the transfer of the stolen goods.

Paragraph 70 of the Complaint alleges that Ms. Feeney and her company SFMG denied they transferred the Database and its contents to MPF and FLF. Paragraph 70 also alleges that the fraudulent concealment was disclosed through "recent disclosures made in discovery". For the first time in 2020 it was confirmed that the Defendants were doing business with a customer of Plaintiffs. In paragraphs 90(f)[9] is it alleged that the Defendants worked to conceal their activity "through a concerted campaign of disinformation", "establishing straw and sham accounts" [C-90f]. "such actions accrue when the injured party knew or, in the exercise of reasonable diligence, should have known the factual basis for the cause of action. *Maggio v. Gerard Freezer & Ice Co*., 824 F.2d 123, 130, (1987).  Again, confirmation of the Database transfer was only obtained through Court Order in 2021 [C-70].

Next, there is the operation of M.G.L. c. 260 Section 12. That statute tolls tort actions that have been fraudulently concealed. "Under this section, Massachusetts statute of limitations saves from its operation causes of action which are fraudulently concealed. *Baker v. Simmons Co*., 325 F.2d 580, (1963):

---

[9] Two paragraphs are numbered 90f, as a typographical error. We refer to both in all "90f" references.

"Where a fiduciary relationship exists between plaintiff and defendant, however, mere failure to reveal information may be sufficient to constitute fraudulent conduct for the purposes of section 12" *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 130, (1987).
 All of the elements of a fiduciary relationship and fraudulent concealment have been alleged through all Counts [C-8,15-19,29,33,53-59, 132-140]. MPF was working for KLG through its contract with SFMG [Exhibit A to C-7] and subject to its non-competition clause when he commenced the conspiracy with Ms. Feeney to transfer the Database to a third party he controlled, as recently revealed when the Discovery Master in the State Case finally ordered that KLG be given back its stolen emails, including those sent by MPF to solicit KLG customers, and other 2021 discovery showing the transfer of the database from SFMG to Defendant FLF [C-70]. The highly confidential nature of the Database materials was known to the Defendants, as well as the fact that the Defendants had no rights to the materials [C-36, 75, 88].

Paragraphs C-92-95 allege that the concealment of the theft occurred on a continuing basis, and the stolen property (i.e., the database) is being utilized continuously to damage KLG, to this day [also C-74].

The remainder of Count I requests injunctive relief to stop the <u>continuing</u> damage, and an accounting of the profits earned from the stolen goods. It is Massachusetts law that while a thief is liable for damage to stolen goods, he is also liable for the profits made with stolen goods. "The conscious wrongdoer cannot make a **profit** and is responsible for losses." *Loring* v. *Baker*, 329 Mass. 63, 66 (1952). *Welch v. Kosasky*, 24 Mass. App. Ct. 402, 406 (1987)
Since the damage is ongoing, the duty to account is ongoing and cannot be time barred.  Last, the "title" of the Count is not an allegation but a reference.  The fact is that the stolen goods must be returned and cannot be used by the Defendants with impunity.

B. Interference with Prospective or Advantageous Business Relationships

The Defendant's statement of the elements of this cause of action are thoroughly reflected in the allegations of the Complaint. Plaintiff had customers who provided money for advertising campaigns[10], manifestly "business relationships" [C-90d]. The Defendant MPF was employed by SMFG working on the KLG account, and the Defendant FLF has Christina Feeney, the architect of the theft, as its CEO [C-3]. It is a reasonable inference from the allegations that the Defendants knew the contents of what they stole and did so for an improper motive, namely to appropriate the valuable Database for their own use [C-15-19].

The Plaintiff alleges that he suffered the loss of his trade secrets, data analytics, client contacts through the theft of the Database by the Defendants, and that such loss caused monetary damages [C-33, 72-73, 90f].  Thus, all elements of the tort specified on page 8 of Defendants' Memorandum are satisfied. Plaintiff alleges that his Clients were stolen, as contained in the Database [C-63]. The Clients for whom the Database analytics were valuable.  The exact names of the Clients is a subject of discovery, and listing each of them is not a requirement of R. Civ. P. 8, or required to survive a Motion to Dismiss[11].  Since the Defendants have the stolen Database, they already know the names.

The same arguments advanced in the last section concerning tolling of the Statute of Limitations due to fraudulent concealment, et al, are repeated here, as is the operation of M.G.L. c. 260 Section 12, tolling limitations upon allegations of fraudulent concealment, or at the very least, making that a jury question, and in fiduciary situations requiring actual notice, not just circumstances suggesting further inquiry should be undertaken.

---

[10] Plaintiff also profited from referral fees from the cases generated as a result of the advertising campaign. See Complaint, Ex. A to Paragraph 7.

[11] In a separate pleading, Plaintiffs request leave to Amend, and would include names. Of course, this action was originally in State Court, and has as yet not been amended after or before removal.

C. Count III "Computer Fraud and Abuse Act" ("CFA Act")

The Defendants admit that the CFA Act provides that the statute of limitations does not begin to run until "the discovery of the damage". Defendants' Memorandum, pages 8-9. It then claims that the recent discovery of the possession of the Database by the Defendants is a "bare assertion", insufficient to survive a Motion to Dismiss. However, Paragraph C-33 alleges that Ms. Feeney stole the Database and transferred it surreptitiously to the Defendants taking with it all data, and trade secrets among other items such as the data analytics [C-29]. The entire database and its analytics were paid for and are owned by KLG [C-37-40,43-44]. C-70 states that Ms. Feeney <u>denied</u> that she transferred the Database to her husband's company FLF, thus fraudulently concealing the theft [C-70]. During 2021 the Plaintiff received verification from Third Parties, and in discovery in the State Litigation, that in fact the Database had been conveyed to FLF by Ms. Feeney despite her earlier protestations to the contrary [C-70]. C-72 alleges that the Defendants have been in continuous use of this stolen property to solicit KLG's customers and usurp its business. The litany of detailed allegations is hardly a "bald assertion".

Defendants next argue on pages 10-11 of their Memorandum that the Plaintiff has failed to allege a cause of action under sections of the CFA that are not here in issue (i.e., "national security" considerations) - a meaningless argument. The Database was kept in "Salesforce", a well-known "in the cloud" relational database platform [C-28].  Its valuable analytical formulations were paid for by Plaintiff to the tune of over $100,000 [C-10], and its maintenance license and further customizations were paid for by KLG in an amount of over $1 million [C-38-40, 68]. The Complaint alleges that the Defendants conspired with Ms. Feeney to steal the Database and its extremely valuable information, and to hide their theft. The Complaint alleges damage and losses to Plaintiff "substantially in excess of $100,000" [C-110]

and theft of the proprietary information in the Database, including trade secrets, for which

Plaintiffs had paid "substantially more than $1 million" [C-109]. The Complaint further alleges

that the theft of the Database and its use to compete with KLG exceeded all authorizations [C-

111], with FLF having no authorization whatsoever[12].  It ought to be obvious that an allegation

of theft of the database is also an allegation of unauthorized use. All elements of an 18 USC §

1030(a)(4) claim are alleged: unauthorized access to a protected computer knowingly and with

intent to defraud, fraudulent concealment of those actions, and resulting damages. Upon such

allegations:

> "Dismissal under Fed. R. Civ. P. 12(b)(6) would be improper at motion to dismiss stage;
> it was unclear whether global communications company knew or should have known of its
> employee's alleged conduct in violation of Computer Fraud and Abuse Act more than two years
> before company filed suit; however, this did not preclude employee from arguing statute of
> limitations as affirmative defense under Fed. R. Civ. P. 8(c) in motion for summary judgment, if
> appropriate. *Motorola, Inc. v. Lemko Corp*., 609 F. Supp. 2d 760"

D. Count IV Chapter 93: 42 and 42A -Misappropriation of Trade Secrets

Defendants are correct that M.G.L. c 93§ 42 and 42A were amended in 2018 to become a

part of the Uniform Trade Secrets Act, and further that a footnote involving dicta in a Superior

Court case decided on an entirely different issue [Acacia Communications, Inc. v ViaSat, Inc.

2018 Mass. Super LEXIS 254] determined that the Act applied only to actions which occurred

after its enactment.  However, Sections 42 and 42A existed prior to their amendment and applied

to the allegations of our Complaint. Defendants erroneously contend that enactment of the

Massachusetts Uniform Trade Secrets Act provided a "free pass" to skullduggery which occurred

before its effective date.  The text as it existed before the Amendment is attached as Exhibit B.

The intent of prior section 42 was:

---

[12] That Ms. Feeney and MPF had authorization to view the database for KLG's purposes during their employment
pursuant to the contract between KLG and SFMG confers no authorization on them to use KLG's trade secrets and
Database information in a campaign to steal KLG's customers and steal the Database which he paid so much for.

"G. L. **c. 93. Section 42** of c. 93 establishes the tort of misappropriation of trade secrets, authorizing liability for "all damages resulting therefrom," as well as for treble damages. The next section, 42A, authorizes injunctive relief against such [*3] conduct. It provides in pertinent part: *HN2* "Any aggrieved person may file a petition in equity in the supreme judicial court or in the superior court for the county in which either the petition or the respondent resides or transacts business, or in Suffolk County, to obtain appropriate injunctive relief . . . ." *Statewide Sec. Prot., Inc. v. Harris*, 2007 Mass. Super. LEXIS 570, *2-3, 23 Mass. L. Rep. 412.

M.G.L. c. 260 Section 12 also applies to this tort action[13], as well as traditional tolling equities

and the position of the fact finder with respect to such determinations. The prior sections of the

Complaint alleging fraudulent concealment engineered by Ms. Feeney and her husband

Defendant MPF are incorporated into this Count and apply thereto. See [C-33, 70, 85, 90, 90f]

Last, Defendants' contention [Memorandum page 13] that the Plaintiff did not allege that

the Database and its trade secrets were improperly acquired because Sweet Feeney owned them

requires that Court to assume as true the <u>opposite</u> of what has been alleged. C-9-11, C-18, C-33

allege that Plaintiff paid for and owned the database and that it was stolen by Ms. Feeney withy

the stolen property transferred to the Defendants. The Complaint is replete with allegations of

ownership of the Database by the Plaintiff, all of which this Court is asked to ignore.

E. Count V - Unjust Enrichment

This Complaint properly alleges that a fiduciary relationship existed between Defendant

MPF and Plaintiff based upon the specifics that for a fee Defendant was allowed access to

sensitive data of Plaintiff's clients for the purposes of performing work for the Plaintiff, and that

he understood the material to be "highly confidential". [C132-34]. Further Defendant MPF was

employed under an Agreement that required him to "keep confidential" all information of

Plaintiffs he was granted access to during his employment [C-135]. Instead MPF conspired to

---

[13] If the Plaintiff has inadvertently in C-115 some of the wording of the 2018 Amendment, as a part of its Motion for Lease to Amend, Plaintiff would change that wording to the pre 2018 stature, which covered pre-2018 misappropriations.

divert Plaintiffs funds to capitalize his law from Defendant FLF [C-137-139], and to conceal their breach of fiduciary duty [C-52, 141].

Under such circumstances, M.G.L. c 260 § 12 "tolls the applicable statute of limitations until the plaintiff has <u>actual knowledge"</u> of the fiduciary's breach. See *von Schönau-Reidweg v. Rothschild Bank AG*, 95 Mass. App. Ct. 471, 494-495 (2019). Defendants incorrectly refer to a state court litigation. In this Complaint, it is alleged that Defendant's wife Christina Feeney denied any transfer of property (i.e., money and the Database) to MPF or FLF, until it was recently discovered in Court ORDERED discovery, but instead engaged in a continuous cover up. See

C-33, which was unearthed in 2021, C-70, C-90,92-93.

The allegations of the State Litigation are not relevant to this action as the State Litigation involves different parties and different assets. That X stole your boat is not evidence or knowledge concerning Y's theft of your car. Knowledge that MPF received and now possesses the database stolen from KLG was only recently obtained [C-70], due to an active cover up [C-33, 49, 52, 85, 90, 90(f)]. The benefit to the Defendants is derived from stolen goods used to solicit Plaintiff's customers with Plaintiff's valuable proprietary information [C-33, 59, 68, 69] and is therefore unjust, and may not be retained by them.

F. Count VI - 93A -Deceptive and Fraudulent Trade Practices

That Defendants' actions were actively concealed is sufficiently alleged given that no discovery has taken place and the Defendant MPF is the wife of the Christina Feeney who originally wrongfully appropriated the Database and actively denied transferring it to MPF and FLF [C-70, 90f]. It was not until 2020 that KLG was able to track down and confirm FLF doing

business with its customer the Flint Law Firm [C-90f] and obtaining verification of the theft[14]. It

is unreasonable to require the Plaintiffs to provide the exact mechanisms of the cover up utilized

by MPF, closely held between husband and wife, before allowing discovery in this matter[15].

Defendants contend that they did not steal the Database, but their denials carry no weight

in a Motion to Dismiss. Further, M.G.L. c 260 §12 is applicable to c 93A claims.  Additionally,

where the facts of a fiduciary relationship are alleged as here, "whether the parties' relationship

was one of trust and confidence" and constituted a fiduciary relationship was for the fact finders

and could not be disposed of on a motion for summary judgment, let alone a motion to dismiss.

Start v. Advanced Magnetics, Inc. 50 Mass App. Ct. 226, 234 (2000), and cases there cited.

G. Count VII - Breach of Fiduciary Duty

M.G.L. c 260 § 12 applies to breach of fiduciary duty and requires "actual knowledge" of

the breach for the statute of limitations to commence running. Hays v. Ellrich, 471 Mass. 592,

602-603 (2015).  As previously alleged, these Defendants received stolen property (the Database,

as well as embezzled KLG campaign funds funneled into FLF) which was ascertained only

recently from ordered discovery in another matter [C-70].

KLG has alleged all of the elements comprising a fiduciary duty. SFMG was entrusted to

possess, spend and account for all of KLG's campaign money to the tune of millions of dollars

[C-23-25].  It was entrusted with maintaining the Database that KLG paid for in full incurring

substantial expense in the process. [C-10, 38-44] knowing full well that KLG would never have

---

[14] KLG obtained the actual transfer documents in 22 GB of discovery turned over after ORDER, this year, but never before.

[15] Plaintiff has moved to Amend. In any amendment, Plaintiff would include as Exhibits the actual Database transfer documents from SFMG to FLF, emails discussing the transfer, emails discussing the solicitation of Plaintiffs Clients, the dates these were obtained, and details of the extraordinary efforts required to obtain them due to the continuing "cover up"

contracted with SFMG without the clear understanding that KLG owned the Database which cost KLG millions [C-18].

Christina Feeney (CEO of Defendant FLF) and the Defendants affirmatively acknowledged the highly confidential nature of their relationship with KLG, the proprietary nature of the Database metrics, and KLG's ownership thereof [C-88].  But for these representations upon which KLG was induced to rely, KLG would never had contracted with SFMG for any purpose [C-90c], let alone entrusted them with the millions in advertising campaign funds or the Database that cost millions to develop and maintain [C-90d].

Defendant MPF was put on the payroll of his wife's Company (SFMG) and owed the same obligation to KLG that his nominal employer did, under the same contract [C-28, 59]

Defendant FLF, by hiring his wife, Christina Feeney as its Chief Executive Officer, after she embezzled money and the Database from KLG and transferred them to FLF, has chosen to impute and transfer her deceit, knowledge of the property stolen and the "cover up" as well.

It was recently discovered [C-70] that the stolen property was transferred to FLF through Ms. Feeney's company SFMG. Establishing straw companies to receive stolen assets does not relieve the acting Party from responsibility. SFMG worked exclusively for KLG, and MPF worked for SFMG (essentially his wife). Christina Feeney then transferred the stolen goods through SFMG to FLF, set up by MPF. The breach is ongoing, and until recently, MPF and FLF was successful in concealing their current possession of the Database, and continuing use of it to this day.

H. Civil Conspiracy

The story of civil conspiracy (basically assisting another to commit a tort) is governed by the same M.G.L. c 260 § 12 as are the other torts alleged herein and the same tolling arguments

are here repeated. Once again, because this was a fiduciary relationship there is the heightened

requirement of "actual knowledge" on the part of the Plaintiff, not suspicion or a hunch. It is a

reasonable inference that a conspiracy engineered by a husband and wife team, and kept among

themselves as here, is among the most difficult to crack.

I. Count IX, Defend Trade Secrets Act

Defendants cite NO Massachusetts Appellate case in support of their proposition that the

Defense of Trade Secrets Act had no effect in Massachusetts on pre-enactment claims. The only

reference provided is *dicta* in a footnote of *Acacia Communications, Inc. v. ViaSat, Inc*. 2018

Mass Super. LEXIS 254 – an unpublished opinion of a Superior Court which is not "precedent"

in Massachusetts, see *Chance v. Curran,* 71 Apt. Ct 258 (2008). Another unpublished opinion,

also of no precedential value *Amgen USA, Inc. v. Karyopharm Therapeutics, Inc*., 2019 Mass.

Super. LEXIS 397 (2019) holds that there is a remedy for misappropriations which commenced

prior to 10/1/2018, but also continued thereafter, while *Acacia*, *supra* holds that such actions

may be split by Defendant and brought in separate actions. A party entitled to any relief under a

statute or legal principal may bring a claim. Here KLG has alleged a continuing wrong and is

entitled to injunctive relief against FLF and MPF, whether under the current or prior versions of

G.L. c 93 §42.  The Defendants' argument results in the anomaly of the 2018 amendment of

Section 42 granting a free ride to those who stole trade secrets prior to its effective date. Such

would have constituted an extraordinary invitation to the unscrupulous to steal trade secrets just

before the 2018 Amendment, knowing their actions would be sanitized on 10/1/2018.

As seen above, Massachusetts has maintained a uniform tort policy of extending statutes

of limitations under circumstances where there has been a fraudulent concealment, requiring

actual notice in situations where, as here, there is also a fiduciary relationship. "Factual disputes

concerning the date on which a Plaintiff knew or should have known their causes of action are resolved by a jury" *Wolinetz v. Berkshire Life Insurance Company,* 361 F.3d 44, 48 (1st Cir, 2004).

Defendants deny a substantive law violation by once again inviting the Court to ignore the requirement that it take Plaintiff's allegations of theft of valuable trade secrets [C-29, 30, 36, 70] as true and instead credit Defendants general denials [Defendants' Memorandum, page 20]

## VI. CONCLUSION

The Motion to Dismiss should be denied and/or the Plaintiff afforded the opportunity to Amend the Complaint in accordance with its separately filed Motion to Amend.

Respectfully submitted:

Kyros Law Group LLC,
By Its Attorney,

7-20-21                          /s/ S. James Boumil
Date                             S. James Boumil, Esq. (BBO#050940)
                                 120 Fairmount Street
                                 Lowell, MA 01852
                                 Tel: 978-458-0507
                                 Email: SJBoumil@Boumil-Law.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 20th day of July, 2021, I caused to be served a copy of the foregoing document by electronic filing through the Court's ECF system on the following:

Marc E. Finkel, Esq.
Jeffrey L. Alitz, Esq.
Matthew Schwartz, Esq.
Freeman Mathis & Gary, LLP
60 State Street, 6th Floor
Boston, MA 02109

/s/ S. James Boumil
S. James Boumil, Esq.